UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

**ROY WIEDRICH,**

          **Plaintiff,**

v.                                       Case No. 20-CV-92

**ANDREW M. SAUL,**
**Commissioner of the Social Security Administration,**

          **Defendant.**

---

## DECISION AND ORDER

---

### 1. Introduction

Seeking disability insurance benefits and supplemental security income, plaintiff Roy Wiedrich alleges he has been disabled since May 11, 2015. (Tr. 29.) After his application was denied initially (Tr. 108-18) and upon reconsideration (Tr. 132-45), a hearing was held before an administrative law judge (ALJ) on January 26, 2018 (Tr. 46). During the hearing Wiedrich amended his alleged onset date to April 8, 2016. (Tr. 29.) On August 7, 2018, the ALJ issued a written decision, concluding that Wiedrich was not disabled. (Tr. 39.) After the Appeals Council denied Wiedrich's request for review on November 22, 2019 (Tr. 1-4), he filed this action.

All parties have consented to the full jurisdiction of a magistrate judge (ECF Nos. 4, 8) and the matter is ready for resolution.

**2. ALJ's Decision**

In determining whether a person is disabled an ALJ applies a five-step sequential evaluation process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). At step one the ALJ determines whether the claimant has engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). The ALJ found that Wiedrich "has not engaged in substantial gainful activity since May 11, 2015, the alleged onset date[.]" (Tr. 32.)

The analysis then proceeds to the second step, which is a consideration of whether the claimant has a medically determinable impairment or combination of impairments that is "severe." 20 C.F.R. §§ 404.1520(a)(4)(ii), (c), 416.920(a)(4)(ii), (c). An impairment is severe if it significantly limits a claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1522(a), 416.922(a). The ALJ concluded that Wiedrich has the following severe impairments: "right distal biceps rupture, nondisplaced fracture of the left wrist distal radius, left shoulder cuff tendonitis, and cervical degenerative disc disease[.]" (Tr. 32.)

At step three the ALJ is to determine whether the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (called "the listings"), 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1525, 416.920(a)(4)(iii), 416.925. If the impairment or

impairments meets or medically equals the criteria of a listing and also meets the twelve-month durational requirement, 20 C.F.R. §§ 404.1509, 416.909, the claimant is disabled. 20 C.F.R. §§ 404.1520(d), 416.920(d). If the claimant's impairment or impairments is not of a severity to meet or medically equal the criteria set forth in a listing, the analysis proceeds to the next step. 20 C.F.R. §§ 404.1520(e), 416.920(e). The ALJ found that Wiedrich "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1[.]" (Tr. 32.)

In between steps three and four the ALJ must determine the claimant's residual functional capacity (RFC), which is the most the claimant can do despite his impairments. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a). In making the RFC finding the ALJ must consider all of the claimant's impairments, including impairments that are not severe. 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2). In other words, "[t]he RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." SSR 96-8p. The ALJ concluded that Wiedrich has the RFC to

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he has additional limitations. He can frequently operate hand controls with his upper extremities. He can occasionally reach overhead with his upper extremities. The claimant can frequently reach in all other directions with his upper extremities. He can frequently handle and finger with his upper extremities. The claimant can climb ramps and stairs occasionally. He can never climb ropes, ladders, or scaffolds. He can occasionally kneel, crouch and crawl.

(Tr. 32.)

After determining the claimant's RFC, the ALJ at step four must determine whether the claimant has the RFC to perform the requirements of his past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1560, 416.920(a)(4)(iv), 416.960. Wiedrich's past relevant work was as a "Line Worker/Stacker… Coil Winder… and Building Maintenance[.] (Tr. 37.) The ALJ stated that Wiedrich "has past relevant work that he is capable of doing is [sic] as a coil winder." (Tr. 37.)

The last step of the sequential evaluation process requires the ALJ to determine whether the claimant is able to do any other work, considering his RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1560(c), 416.920(a)(4)(v), 416.960(c). At this step the ALJ concluded that "there are other jobs that exist in significant numbers in the national economy that [Wiedrich] also can perform[.]" (Tr. 38.) In reaching that conclusion the ALJ relied on testimony from a vocational expert, who testified that a hypothetical person of Wiedrich's age, education, work experience, and residual functional capacity could perform the requirements of occupations such as a host and a counter clerk. (Tr. 38.) After finding that Wiedrich could perform work in the national economy, the ALJ concluded that he was not disabled. (Tr. 38.)

3. **Standard of Review**

The court's role in reviewing an ALJ's decision is limited. It must "uphold an ALJ's final decision if the correct legal standards were applied and supported with substantial evidence." *L.D.R. by Wagner v. Berryhill*, 920 F.3d 1146, 1152 (7th Cir. 2019) (citing 42 U.S.C.

§ 405(g)); *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017) (quoting *Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010)). "The court is not to 'reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] judgment for that of the Commissioner.'" *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) (quoting *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). "Where substantial evidence supports the ALJ's disability determination, [the court] must affirm the [ALJ's] decision even if 'reasonable minds could differ concerning whether [the claimant] is disabled.'" *L.D.R. by Wagner*, 920 F.3d at 1152 (quoting *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008)).

### 4. Analysis

Wiedrich challenges the "little weight" the ALJ afforded the opinions of consulting examiner A. Neil Johnson, M.D., treating physician Joseph Cullen, M.D., and treating physician Matthew Butler, M.D. (ECF No. 15 at 6-19.)

"For claims filed before March 2017, a treating physician's opinion on the nature and severity of a medical condition is entitled to controlling weight if it is well-supported by medical findings and consistent with substantial evidence in the record." *Johnson v. Berryhill*, 745 F. App'x 247, 250 (7th Cir. 2018) (unpublished) (citing 20 C.F.R. § 404.1527(c)(2); *Brown v. Colvin*, 845 F.3d 247, 252 (7th Cir. 2016)). "If an ALJ does not give

a treating physician's opinion controlling weight, the regulations require the ALJ to consider the length, nature, and extent of the treatment relationship, frequency of examination, the physician's specialty, the types of tests performed, and the consistency and supportability of the physician's opinion" to determine how much weight to give the opinion. *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009) (citing 20 C.F.R. § 404.1527(c)(2)).

While "[a]n ALJ must offer good reasons for discounting a treating physician's opinion," *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010) (internal quotations and citation omitted), courts will uphold "all but the most patently erroneous reasons for discounting a treating physician's assessment." *Stepp v. Colvin*, 795 F.3d 711, 718 (7th Cir. 2015) (citing *Luster v. Astrue*, 358 F. App'x 738, 740 (7th Cir. 2010) (unpublished)).

**4.1. A. Neil Johnson, M.D.**

A. Neil Johnson, M.D., is a consulting examiner who was contracted by Social Security to examine Wiedrich. (Tr. 35.) In an opinion dated November 4, 2015, Dr. Johnson stated:

> [Wiedrich] states that he tore the biceps and a tendon at the right elbow. He had right elbow tendon surgery. He has a lot of pain involving the right biceps. He has bee sting feelings there. He has pain at the right shoulder and right elbow. He has been told he had partial tear of the rotator cuff. Pinch and grip are significantly reduced in his right hand. He cannot lift more than 10 to 12 pounds on the right hand.

(Tr. 491.)

The ALJ gave the opinion "some weight," stating:

> The undersigned agrees that [Wiedrich] can frequently lift 10 to 12 pounds with the right hand, but does not agree that 12 pounds is the maximum given that he was found to have grip strength of 25 pounds and full strength throughout his muscle groups (11F/7; 15F/8).

(Tr. 35-36.)

"As a general rule, an ALJ is not required to credit the agency's examining physician in the face of a contrary opinion from a later reviewer or other compelling evidence." *Beardsley v. Colvin*, 758 F.3d 834, 839 (7th Cir. 2014). But "[a]n ALJ can reject an examining physician's opinion only for reasons supported by substantial evidence in the record; a contradictory opinion of a non-examining physician does not, by itself, suffice." *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003) (citing *Moore v. Comm'r of the SSA*, 278 F.3d 920, 924 (9th Cir. 2002)). "[R]ejecting or discounting the opinion of the agency's own examining physician that the claimant is disabled… can be expected to cause a reviewing court to take notice and await a good explanation for this unusual step." *Beardsley*, 758 F.3d at 839. And an examining medical source's opinion is generally given more weight than a non-examining medical source. 20 C.F.R. §§ 404.1527(c)(1), 416.927(c)(1).

Wiedrich argues that the ALJ erred by "playing doctor" when he evaluated Dr. Johnson's opinion. (ECF No. 15 at 10.) Specifically, after stating that the ALJ cited no medical evidence supporting his conclusion, Wiedrich argues that "one may have sufficient grip strength but be unable to lift because of shoulder or elbow problems." (*Id.* at 11.)

7
Case 1:20-cv-00092-WED   Filed 03/17/21   Page 7 of 12   Document 23

In response, the Commissioner argues that the ALJ's conclusion is consistent with other medical opinions in the record finding he was capable of lifting more than twelve pounds. (ECF No. 19 at 10.)

In an opinion dated May 6, 2015, independent examining physician Dr. Jan Bax stated she "would suggest a 5 percent permanent partial impairment rating of the upper extremity elbow as compared to amputation at the shoulder due to loss of motion at strength[.]" (Tr. 738.) In an opinion signed November 15, 2015, state agency reviewing physician Dr. George Walcott found that Wiedrich could occasionally lift and/or carry 20 pounds and frequently lift and/or carry 10 pounds. (Tr. 115.) On March 28, 2016, treating occupational therapist Kathleen Lim stated, in a medical note under work restrictions, "lifting 20 lb. maximum with frequent lifting or carrying objects weighing up to 10 lb. with the right hand only. Left hand is totally temporary disabled." (Tr. 568.) And in an opinion signed May 26, 2016, state agency reviewing physician Dr. Stephanie Green also found that Wiedrich could occasionally lift and/or carry 20 pounds and frequently lift and/or carry 10 pounds. (Tr. 142.) The ALJ gave some or great weight to these opinions. (Tr. 35-36.)

The ALJ relied on evidence that Wiedrich had a grip strength of twenty-five pounds and "full strength throughout his muscle groups" to determine that he has more than a twelve-pound maximum lifting ability. (Tr. 36.) The ALJ did not point to any medical evidence suggesting that grip strength and "full strength throughout his muscle

groups" was evidence of Wiedrich's maximum lifting ability. However, the opinions of Dr. Bax, Occupational Therapist Lim, Dr. Walcott, and Dr. Green all state or suggest that Wiedrich has more than a twelve-pound maximum lifting ability. By addressing all of the opinions together, the ALJ made it clear that he discounted Dr. Johnson's opinion because it was inconsistent with the other medical opinions. Thus, the ALJ's explanation for the weight he afforded Dr. Johnson's opinion is supported by substantial evidence.

The ALJ's discounting of Dr. Johnson's opinion is not a basis for remand.

### 4.2. Joseph Cullen, M.D.

On February 2, 2016, treating physician Dr. Joseph P. Cullen, M.D., opined that Wiedrich could do work with his right hand only with light assist of the left hand up to two pounds, no constant high force gripping, no frequent extremes of wrist position, and no repetitive use of his left hand/arm. (Tr. 509.) On March 21, 2016, Dr. Cullen opined that Wiedrich was totally temporarily disabled. (Tr. 555.) On April 18, 2016, Dr. Cullen opined that Wiedrich could use his left hand for light assist only up to two pounds, as well as no use of fast moving equipment, no constant high force gripping, no frequent extremes of wrist position, and no repetitive use of his left hand/arm. (Tr. 554.) On May 23, 2016, and July 29, 2016, Dr. Cullen opined that Wiedrich was limited to sedentary work, defined as "[l]ifting 10 lb. maximum and occasional lifting or carrying objects weighing up to 5 lb." (Tr. 581, 582.)

9
Case 1:20-cv-00092-WED   Filed 03/17/21   Page 9 of 12   Document 23

The ALJ gave "little weight" to Dr. Cullen's opinions

> because they are inconsistent with the objective evidence. [Wiedrich] had grip strength of 25 pounds, which is inconsistent with sedentary exertion limits. Further, his activities of daily living are inconsistent with being limited to sedentary exertion work. For example, he walks his 150-pound dog (llF/16; 18F/4). Additionally, the finding of disability is reserved for the Commissioner.

(Tr. 35.)

Wiedrich argues that, apparently for the same reasons discussed in the context of Dr. Johnson's opinion, the ALJ erred in stating that Wiedrich "had grip strength of 25 pounds, which is inconsistent with sedentary exertion limits." (ECF No. 15 at 12-13.) He also argues that the ALJ erred in failing to clarify that the dog Wiedrich said he walked was the same dog weighing 150 pounds that is referenced in a 2016 medical record. (*Id.* at 13.) And he argues that the ALJ erred by failing to consider the consistency between the opinions of Dr. Johnson and Dr. Cullen. (*Id.* at 14.)

As in the analysis of Dr. Johnson's opinion, by addressing all of the opinions together the ALJ made it clear that he discounted Dr. Cullen's opinion regarding Wiedrich's limited lifting ability because it was inconsistent with the other medical opinions. The ALJ sufficiently explained why he discounted that aspect of Dr. Cullen's opinion. As for Wiedrich's criticism of the ALJ's finding regarding the dog he walked, the court finds that the ALJ was free to infer that Wiedrich walked the same dog he discussed elsewhere in the record. In short, the ALJ supported with substantial evidence his decision to give little weight to Dr. Cullen's opinion.

### 4.3. Matthew Butler, M.D.

Treating physician Matthew Butler, M.D., opined in April 2015 that Wiedrich could perform medium work which involves lifting up to 25 pounds frequently and 50 pounds occasionally. (Tr. 421.) But on February 24, 2017, Dr. Butler opined that Wiedrich could perform only work which involves frequently lifting no more than 10 pounds, and he indicated that this dated back to August 7, 2015. (Tr. 594-96.)

The ALJ gave Dr. Butler's opinions "little weight" because

> they are inconsistent with the objective evidence and one another. Dr. Butler states that that [sic] [Wiedrich's] symptoms are non-anatomic (5F/13). Furthermore, there is nothing in the record that supports [Wiedrich] going from being able to do medium exertion work in April 2015 to only sedentary work in August 2015.

(Tr. 35.)

Wiedrich argues that the ALJ "erroneously concluded the findings supportive of Dr. Butler's opinion had to be developed during the period of April 2015 and August 2015." (ECF No. 15 at 14.) Instead, "Dr. Butler could opine on a prospective consideration of the record[,]" which he describes as inferring that a condition diagnosed from data currently available had been ongoing since an earlier date. (*Id.* at 14.)

The Commissioner responds that Dr. Butler did not cite any objective medical evidence to support his opinion that Wiedrich could only do sedentary work in August 2015 and the ALJ is entitled to discount a medical opinion that provides little evidence in support of its conclusion. (ECF No. 19 at 14.)

The ALJ reasonably explained why he discounted Dr. Butler's opinion—Dr. Butler described Wiedrich's symptoms as non-anatomic and failed to provide evidence to support his opinion that Wiedrich was limited to frequently lifting no more than ten pounds in August 2015. The record summary does not significantly discuss how Wiedrich's arm issues would impact his ability to work, and they specifically do not speak to his ability to perform medium or sedentary work. (ECF No. 15 at 14-21.)

Wiedrich has not shown that the ALJ erred in his assessment of the weight given to Dr. Butler's opinion. The ALJ supported his decision to give little weight to Dr. Butler's opinion with substantial evidence.

5. Conclusion

**IT IS THEREFORE ORDERED** that the Commissioner's decision is **affirmed**. The Clerk shall enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 17th day of March, 2021.

_____
WILLIAM E. DUFFIN
U.S. Magistrate Judge